# EXHIBIT A

# STATE COURT COMPLAINT

**EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
MONROE COUNTY, GEORGIA

**SUCV2021000409**

OCT 08, 2021 12:05 PM

*Lindsey Taylor*
Lindsey Taylor, Clerk
Monroe County, Georgia

## IN THE SUPERIOR COURT OF MONROE COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| NEYSA QUINN, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | NO. _____ |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| GEORGIA POWER COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## **COMPLAINT**

COMES NOW Plaintiff Neysa Quinn and files this Complaint for personal and property damages that she has incurred as a result of Defendant Georgia Power Company's operations at Robert W. Scherer Electric Generating Plant ("Plant Scherer"), the most powerful coal-fired power plant in North America, which is located in Plaintiff's backyard.

## **INTRODUCTION**

1.      This action for damages arises out of Georgia Power Company's prior and continuing release, discharge, and deposit of toxins into the groundwater and air that has caused extreme personal and property damage to Plaintiff.

2.      Georgia Power Company ("Defendant" or "Georgia Power") initially disrupted the environment around its Robert W. Scherer Electric Generating Plant ("Plant Scherer") when it created a man-made lake (Lake Juliette) to enable the Plant's operations.

3.      Georgia Power exacerbated and continued its pollution activities by unlawfully discharging toxic heavy metals and radionuclides from coal ash into the air and an unlined pond located at Plant Scherer, which led to the release and migration of pollutants into the groundwater and onto Plaintiff's property and into Plaintiff's drinking water.

## PARTIES

4.      Neysa Quinn is, and was at all times relevant, a citizen of the state of Georgia, residing at 394 Old Dames Ferry Road, Juliette, Georgia 31046 (Monroe County).

5.      Currently, and at all times relevant, Neysa Quinn resided at 394 Old Dames Ferry Road, Juliette, Georgia 31046.

6.      Currently, and at all times relevant, Neysa Quinn owned the property located at 394 Old Dames Ferry Road, Juliette, Georgia 31046.

7.      Georgia Power Company is a corporation formed under the laws of the State of Georgia, and whose principal office address is 241 Ralph McGill Boulevard NE, Atlanta, Fulton County, Georgia 30308.

8.      Georgia Power has owned and operated Plant Scherer located at 10986 GA-87, Juliette, Georgia 31046 (Monroe County) during all times relevant to the matters described and claims asserted in this Complaint.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction of this action and has personal jurisdiction over Defendant in this action.

10.     Venue is proper in this Court.

## FACTUAL BACKGROUND

### Plant Scherer

11.     Georgia Power owns and operates Plant Scherer, a 12,000-acre coal-fired power plant located in Juliette, Georgia.

12.     Georgia Power built Lake Juliette in 1980 to provide a dependable reservoir of water for Plant Scherer's operations.

13.    Plant Scherer is named after Robert W. Scherer, a former chairman and chief executive officer of Georgia Power.

14.    Plant Scherer consists of four units, each with a rated capacity of 945 megawatts.

15.    The first unit was brought online in 1982.  The other units were brought online in 1984, 1987, and 1989, respectively.

16.    Plant Scherer is the most powerful coal-fired power plant in North America.  It is the fourth-largest electric generating plant in the United States, and the largest to be fueled exclusively by coal, according to the U.S. Energy Information Administration.

17.    According to the U.S. Environmental Protection Agency, Plant Scherer is the top single emitter of Greenhouse Gas emissions among all United States power plants, averaging over 20 million tons per year through at least 2018.

18.    Plant Scherer burns coal for the purpose of generating energy.  Lake Juliette provides water to make steam, which generates the electricity.  Coal is burned to heat the water into steam.

19.    Georgia Power purchases coal for use at Plant Scherer from the Powder River Basin in Wyoming.

20.    Coal from the Powder River Basin contains elements that include toxic heavy metals and radionuclides.  It is known in the industry as the cheapest and dirtiest coal available.

**Coal ash**

21.    Georgia Power generates large quantities of coal ash when it burns coal to generate energy at Plant Scherer.

22.    Coal ash, also referred to as coal combustion residuals or CCRs, is produced primarily from the burning of coal in coal-fired power plants.  Coal ash includes a number of by-

products produced from burning coal, including fly ash, bottom ash, boiler slag, and flue gas desulfurization material. This Complaint uses the term "coal ash" to refer to all the material mentioned in this paragraph.

23.     Coal ash contains materials that are known carcinogens and neurotoxins, including, but not limited to, arsenic, barium, boron, cadmium, chromium VI (hexavalent chromium), copper, gross alpha and beta emissions, lead, lithium, manganese, mercury, molybdenum, nickel, radium, radon, selenium, thallium, and uranium.

24.     The risks to humans associated with exposure to these toxins from coal ash include elevated probabilities of cancer, neurological and psychiatric effects, cardiovascular effects, immune system damage, liver damage, kidney damage, decreased thyroid function, birth defects, developmental disabilities, respiratory system effects, damage to blood vessels, anemia, skin disorders, bone sarcomas, carcinomas of the paranasal sinuses and mastoid process, and other acute and chronic toxic reactions.

### Coal Ash Pond

25.     Georgia Power disposes of Plant Scherer's coal ash in, among other places, a 776-acre pond located on the campus of Plant Scherer ("Coal Ash Pond").

26.     The Coal Ash Pond is unlined and contains roughly 15.7 million tons of coal ash, much of which is located beneath the groundwater table, which is the area from which groundwater flows.

27.     The Coal Ash Pond is located in close proximity to Plaintiff's residence.

28.     Coal ash left in unlined basins, such as the Coal Ash Pond at Plant Scherer, is likely to leach toxic metals and radionuclides into the groundwater.

29.     Coal ash has and continues to leach from the Coal Ash Pond.

30.      This leaching occurs via groundwater infiltrating the unlined basin of the Coal Ash Pond.  The groundwater flow carries the toxins from the coal ash to the groundwater and air on the property where Plaintiff lives.

**The location of Georgia Power's monitoring wells evades representative results**

31.      Georgia Power has set up various monitoring wells supposedly to monitor water conditions as a result of the operation of Plant Scherer, including the use of the Coal Ash Pond. But the locations of these wells and the depth of the well screens are insufficient to properly monitor contaminants leaching from the unlined Coal Ash Pond to the groundwater.

32.      The monitoring wells are located horizontally adjacent to the Coal Ash Pond, but groundwater flow is vertical from the Coal Ash Pond to the bedrock aquifer, which is the underground rock through which groundwater travels to reach streams, lakes, rivers, and Plaintiff's well.

33.      The monitoring well screens, which are filters that allow water to enter the pipes, are placed above the bedrock aquifer.  Thus, they are not within the flow from the Coal Ash Pond.

34.      Well screens would need to be located below 380 feet mean sea level (MSL) to properly detect groundwater contaminant plumes generated by toxic metals and radionuclides leaching from the Coal Ash Pond.  All of Georgia Power's well screens are above the minimum elevation of 380 MSL.

**Undisturbed naturally occurring environmental constituents in Monroe County would not be toxic**

35.      In 1977, prior to the establishment of Plant Scherer and Lake Juliette, the U.S. Geological Survey conducted background monitoring of 42 wells in Monroe County, Georgia.

36.    The results of that monitoring indicated that uranium concentrations in all 42 wells, with the exception of one, were all well below the U.S. Environmental Protection Agency's maximum contaminant level (MCL) of 30 ppb (parts per billion), and the vast majority of the wells showed levels below the minimum detection limit of 0.1 ppb.  The sole exception was a well in the southern part of the county that tested at 62.3 ppb.

37.    The source for these low levels of uranium is a naturally occurring mylonite geologic deposit.

38.    Georgia Power should have known that naturally occurring uranium is associated with the mylonite deposit, and that the uranium would become more soluble and mobile if the pH balance of the environment is disrupted.

39.    Georgia Power's construction of Lake Juliette disrupted the pH balance in the environment.

40.    The establishment of Lake Juliette increased the local pH in the groundwater from slightly acidic conditions in 1977 (pH ranging from 6-6.8) to the current basic conditions (pH of 7.4).

41.    The increased pH level has increased the solubility of the naturally occurring uranium from the mylonite deposit.

42.    The uranium concentrations have significantly increased from the levels measured in 1977.  Between 2010-2019, the University of Georgia tested 40 wells in locations similar to those tested in 1977 and found that the uranium concentrations ranged from 30.1 ppb to 6,297 ppb.  All 40 wells tested orders of magnitude above the U.S. Environmental Protection Agency's maximum contaminant level of 30 ppb.

## Contamination of Plaintiff's water and air

43.    Since the inception of Plant Scherer and the Coal Ash Pond, and continuing today, Georgia Power has owned and operated Plant Scherer in such a negligent, reckless, and otherwise unlawful manner so as to allow, through their acts and omissions, the discharge, release, seepage, deposit, and emission of toxins into Plaintiff's well water, air, and otherwise onto Plaintiff's property.

44.    Georgia Power has and continues to unlawfully release, discharge, and deposit toxins from the Coal Ash Pond at Plant Scherer into the local well water used by Plaintiff and/or onto Plaintiff's property.

45.    Georgia Power's operation of Plant Scherer creates harmful air emissions of uranium, radionuclides, chromium, cadmium, vanadium, cobalt, strontium, boron, and nickel, which impacts residents in Juliette and Forsyth, Georgia (including Plaintiff) through inhalation and contamination by shallow soil deposits during rain events.

46.    Unsafe levels of toxins from Plant Scherer are present in the Plaintiff's well water above the U.S. Environmental Protection Agency's maximum contaminant levels and tap water screening levels, including chromium VI (hexavalent chromium).

47.    The detected toxins in the well water are the result of contamination from Georgia Power operations at Plant Scherer and Lake Juliette.  The contaminants are not from naturally occurring constituents in the soils, bedrock, surface streams, and groundwater in Monroe County, with the exception of uranium, which until Georgia Power disturbed the environment and changed the pH level, occurred in levels well below the U.S. Environmental Protection Agency's maximum contaminant level for health standards in groundwater.

48. Plaintiff obtained her drinking water from her groundwater well where unsafe levels of contaminants are found. Plaintiff also used water from her well to cook, clean, water her garden and lawn, and in other household activities.

49. Plaintiff has been exposed, and continues to be exposed, to the toxins created by Georgia Power's operations at Plant Scherer and Lake Juliette.

50. Georgia Power provided Plaintiff no warning that activity from Plant Scherer and the existence of the unlined Coal Ash Pond regularly exposed, and continue to expose, Plaintiff to toxic substances.

51. In fact, Georgia Power has made affirmative statements that the operations at Plant Scherer and its use of the Coal Ash Pond do not pose any danger to Plaintiff or any resident living near Plant Scherer.

52. Georgia Power has made affirmative statements that the operations at Plant Scherer do not affect the groundwater of Juliette residents.

53. The release, discharge, and deposits of toxins into the environment and onto Plaintiff's property was foreseeable and preventable. Georgia Power knowingly released, discharged, and deposited toxins into the environment and was aware that in so doing, it was likely injuring local residents, such as Plaintiff.

54. The discharges, releases, and deposits caused by the acts and omissions of Georgia Power have caused Plaintiff, her well water, and her residence to be exposed to highly toxic and hazardous coal ash and have caused damage to the natural resources and environment in and around Plaintiff's residence, thereby causing Plaintiff to incur health injuries, pain and suffering, loss of quality of life, property damage, and other damages.

55.     As a result of Georgia Power's releases, discharges, and deposits of toxic and hazardous substances into the areas surrounding Plant Scherer, Plaintiff has suffered injuries to her person and property.

56.     Plaintiff suffers from thyroid cancer, among other personal injuries.

## COUNT I – NEGLIGENCE

57.     Plaintiff adopts and incorporates the preceding paragraphs above as if fully restated herein.

58.     O.C.G.A. § 44-8-1 places an affirmative duty on landowners concerning running water, such that a landowner may not "use or adulterate it as to interfere with the enjoyment of it by the next owner."

59.     Defendant was negligent as a landowner by adulterating groundwater through the disposal of toxic and hazardous materials and other Plant Scherer operations so as to interfere with the enjoyment of groundwater and air by other owners, including Plaintiff.

60.     Defendant was negligent in its construction of Lake Juliette.

61.     Defendant was and is negligent in the method by which it disposes of coal ash at Plant Scherer.

62.     Defendant was negligent in the construction of the Coal Ash Pond by failing to install a liner in spite of the significant known risk that left unlined, the Coal Ash Pond could release, discharge, and deposit pollutants through groundwater running beneath or through Plant Scherer to other landowners and residents, such as Plaintiff.

63.     Defendant was negligent in the use and maintenance of the Coal Ash Pond by dumping millions of tons of coal ash there and causing the toxic concentration of leachate that far exceeds safe levels.

64.    Defendant was and is negligent in the maintenance of the Coal Ash Pond by allowing significant discharge of coal ash pollutants therefrom into the groundwater and air located in the vicinity of Plant Scherer.

65.    Defendant knew or should have known that its activities would have toxic, poisonous, and highly deleterious effects upon the health of persons inhaling, ingesting, or otherwise absorbing the waste generated at Plant Scherer.

66.    Defendant breached its duty to Plaintiff by disposing of toxic materials in the unlined Coal Ash Pond and allowing toxic and hazardous material to contaminate the natural resources of nearby residents, which Defendant knew, or should have known, would foreseeably cause Plaintiff to come into contact with, or otherwise be exposed to, the toxic substances.

67.    Defendant recklessly and negligently failed and/or refused to provide accurate and adequate warnings of the health hazards and dangers of exposure to coal ash and other toxins to Plaintiff who would reasonably and foreseeably come into contact with or be harmed by the toxic materials.

68.    Defendant recklessly and negligently failed to fully and properly test, analyze, and study the constituents of the coal ash and other toxins so as to fully understand the health hazards associated with disposing these materials in the unlined Coal Ash Pond.

69.    Defendant, as property owner and operator of Plant Scherer, has a duty to use its land in a manner that does not injure other landowners.

70.    Defendant has breached this duty by failing to maintain the property at Plant Scherer in a manner that would not result in ongoing damage to Plaintiff's property and her property rights.

71.     Defendant has breached this duty by failing to manage pollutant discharges and other toxins in a manner that does not cause damage to Plaintiff's property and her property rights.

72.     Defendant's failure to maintain its property and its actions and/or omissions in the course of the operation, maintenance, development, and/or construction activities at Plant Scherer has resulted in the severe adulteration and degradation of waters which flow onto Plaintiff's property and into the watercourses located thereon and thereby interferes with Plaintiff's traditional recreational, aesthetic, and residential uses of her property.

73.     Defendant's activities as alleged herein are a cause in fact and a proximate cause of the damages that Plaintiff has suffered.

74.     As a result of Defendant's negligence, Plaintiff has suffered personal and property damages, including but not limited to damages to her health, invasions of her property, loss of the use and enjoyment of her property, diminution of value of her property, and restoration costs of returning her property to its original state.

75.     As a result of Defendant's foregoing acts and omissions, Plaintiff has incurred (and continues to incur) special damages, including medical expenses.  Plaintiff's total special damages are in an amount to be proven at trial.

76.     As a result of Defendant's foregoing acts and omissions, Plaintiff has incurred (and continues to incur) special damages, including diminution of value and the cost of restoration and repair of her property.  Plaintiff's total special damages are in an amount to be proven at trial.

77.     Plaintiff is also entitled to be compensated for nominal damages and her annoyance, inconvenience, and loss of use and enjoyment of her property resulting from

Defendant's actions as alleged herein in an amount to be determined by the enlightened conscience of the jury.

## COUNT II – NEGLIGENT FAILURE TO WARN

78.    Plaintiff adopts and incorporates the preceding paragraphs above as if fully restated herein.

79.    At all times relevant to the matters described herein, Defendant has owned, operated, and exercised exclusive control over the operations of Plant Scherer.

80.    Defendant's operation of Plant Scherer includes the generation of large quantities of coal ash, which contain toxic heavy metals and radionuclides that pose significant dangers and risks to human health, including Plaintiff's health.

81.    Defendant knew or should have known that disposal of large quantities of coal ash in the Coal Ash Pond, which remains unlined to date, would leach toxic heavy metals and radionuclides into the groundwater where Plaintiff obtained her drinking water from the private groundwater wells on the property where she resides.

82.    Given the likelihood of contamination arising from Defendant's reckless and negligent creation and operation of Plant Scherer and the Coal Ash Pond, Defendant had a duty to investigate the extent of the discharge, release, seepage, deposit, and emission of pollutants into Plaintiff's groundwater and warn Plaintiff of such toxic exposures.

83.    At all times relevant, unsafe levels of toxic contaminants were in Plaintiff's groundwater.

84.    Defendant breached its duty to Plaintiff by providing no warnings that releases, discharges, and deposits from Plant Scherer and the Coal Ash Pond regularly exposed, and continue to expose, Plaintiff to toxic heavy metals and radionuclides.

85.     Any adequate warning would have minimized, reduced, and/or avoided the foreseeable and preventable risk of harm posed by Defendant's reckless and negligent creation and operation of Plant Scherer and the Coal Ash Pond.

86.     If Defendant provided adequate warnings, Plaintiff could have taken necessary steps to prevent further harm and exposure to the unsafe levels of toxic contaminants found in Plaintiff's well and groundwater.

87.     Defendant recklessly and negligently failed and/or refused to provide accurate and adequate warnings of the health hazards and dangers of exposure to coal ash and other toxins to Plaintiff who would reasonably and foreseeably come into contact with or be harmed by the toxic heavy metals and radionuclides.

88.     Defendant's failures, actions, and/or omissions at Plant Scherer and the Coal Ash Pond are a cause in fact and a proximate cause of Plaintiff's damages.

89.     As a result of Defendant's foregoing acts and omissions, Plaintiff has incurred (and continues to incur) special damages, including medical expenses.  Plaintiff's total special damages are in an amount to be proven at trial.

90.     As a result of Defendant's foregoing acts and omissions, Plaintiff has incurred (and continues to incur) special damages, including diminution of value and the cost of restoration and repair of her property.  Plaintiff's total special damages are in an amount to be proven at trial.

91.     Plaintiff is also entitled to be compensated for nominal damages and her annoyance, inconvenience, and loss of use and enjoyment of her property resulting from Defendant's actions as alleged herein in an amount to be determined by the enlightened conscience of the jury.

## COUNT III – NUISANCE

92.     Plaintiff adopts and incorporates the preceding paragraphs above as if fully restated herein.

93.     The dumping of coal ash and other operations at Plant Scherer have resulted in discharges of toxic, hazardous, and radioactive substances into the area surrounding Plant Scherer, including the groundwater, Plaintiff's well water, and the air.

94.     These discharges have resulted and continue to result in the contamination and accumulation of toxic metals and radionuclides on Plaintiff's property.

95.     As a result, Plaintiff has suffered injuries to her person and property.

96.     Plaintiff is entitled to the full use and enjoyment of her property free from pollutant discharges caused by Defendant.  The ongoing discharges of pollutants have and are continuing to unreasonably and substantially interfere with Plaintiff's use and enjoyment of her property.

97.     The ongoing discharges of pollutants have caused and are continuing to cause Plaintiff to suffer hurt, inconvenience, and/or damage within the meaning of O.C.G.A. § 41-1-1.

98.     The ongoing discharges constitute a continuing abatable nuisance, pursuant to O.C.G.A. § 41-1-5, for which Defendant is responsible.

99.     Because Defendant created the nuisance, Plaintiff is not required to give Defendant notice to abate the nuisance before filing this action.

100.    The nuisance caused by Defendant is an actual and proximate cause of Plaintiff's damages and injuries.

101.    Plaintiff's property has been negatively impacted by Defendant's creation of and failure to abate the nuisance.

- 14 -

102.    Defendant's use and maintenance of Plant Scherer, as described above, constitutes a nuisance. It is injurious to Plaintiff's health and offensive to Plaintiff's senses, so as to obstruct the free use of Plaintiff's property and interferes with Plaintiff's comfortable enjoyment of life.

103.    As a proximate result of the nuisance created and maintained by Defendant, the Plaintiff has suffered personal and property damages in an amount to be determined at trial.

104.    Plaintiff's property has been diminished in value as a proximate result of the nuisance created by Defendant in an amount to be determined at trial.  Unless the nuisance created by Defendant is abated, Plaintiff's property will continue to diminish in value.

105.    As a proximate result of the nuisance created by Defendant, Plaintiff has suffered physical injury and extreme mental anguish and had to be placed under the care of physicians. Plaintiff has suffered damages in an amount to be determined by proof at trial.

106.    As a proximate result of the nuisance created by Defendant, Plaintiff was required to obtain medical services and treatment in an amount to be determined by proof at trial and will, in the future, be compelled to incur additional obligations for medical treatment in an amount to be determined by proof at trial.

107.    As a result of Defendant's foregoing acts and omissions, Plaintiff has incurred (and continues to incur) special damages, including medical expenses.  Plaintiff's total special damages are in an amount to be proven at trial.

108.    As a result of Defendant's foregoing acts and omissions, Plaintiff has incurred (and continues to incur) special damages, including diminution of value and the cost of restoration and repair of her property.  Plaintiff's total special damages are in an amount to be proven at trial.

109.    Plaintiff is also entitled to be compensated for nominal damages and her annoyance, inconvenience, and loss of use and enjoyment of her property resulting from Defendant's actions as alleged herein in an amount to be determined by the enlightened conscience of the jury.

## COUNT IV – TRESPASS

110.    Plaintiff adopts and incorporates the preceding paragraphs above as if fully restated herein.

111.    Plaintiff owns and possesses the property located at 394 Old Dames Ferry Road, Georgia, 31046.

112.    The failure by Defendant to properly construct and maintain the Coal Ash Pond and Defendant's creation and operation of Plant Scherer have caused coal ash pollutants and other toxins to enter Plaintiff's property.

113.    The unpermitted invasions of Plaintiff's property have resulted in the deterioration of Plaintiff's property and the air and well water located thereon.

114.    Plaintiff neither invited nor authorized Defendant's discharge of pollutants onto, over, and through her property.

115.    Defendant's ongoing discharges of pollutants on Plaintiff's property have interfered with Plaintiff's rights to the exclusive possession, control, and use of her property, and constitute trespass.

116.    As a result of these trespasses, Plaintiff has suffered damages for her inability to exclusively possess her property and for the restoration of her property to its original state.

117.    Plaintiff has suffered both personal and property damages in an amount to be proven at trial.

118.    As a result of Defendant's foregoing acts and omissions, Plaintiff has incurred (and continues to incur) special damages, including medical expenses.  Plaintiff's total special damages are in an amount to be proven at trial.

119.    As a result of Defendant's foregoing acts and omissions, Plaintiff has incurred (and continues to incur) special damages, including diminution of value and the cost of restoration and repair of her property.  Plaintiff's total special damages are in an amount to be proven at trial.

120.    Plaintiff is also entitled to be compensated for nominal damages and her annoyance, inconvenience, and loss of use and enjoyment of her property resulting from Defendant's actions as alleged herein in an amount to be determined by the enlightened conscience of the jury.

## COUNT V – ATTORNEY'S FEES AND COSTS

121.    Plaintiff adopts and incorporates the preceding paragraphs above as if fully restated herein.

122.    Pursuant to O.C.G.A. § 13-6-11, Defendant has acted in bad faith, has been stubbornly litigious, and/or has caused the Plaintiff unnecessary trouble and expense, for which Plaintiff is entitled to recover his expenses of litigation, including reasonable attorney's fees and expenses, from Defendant.

123.    Because Defendant has failed and refused to abate the unlawful conditions on Plaintiff's property, Plaintiff was forced to incur attorney's fees and expenses in an effort to resolve this matter.  Plaintiff will be forced to incur additional attorney's fees and expenses unless and until Defendant ceases and abates its unlawful and illegal use, occupation, and possession of Plaintiff's property.

## COUNT VI – PUNITIVE DAMAGES

124.    Plaintiff adopts and incorporates the preceding paragraphs above as if fully restated herein.

125.    Defendant knew of the defects in and its defective maintenance of the Coal Ash Pond, but willfully ignored them, concealed them from Plaintiff, and failed to warn Plaintiff about the scope of the defects, intentionally and willingly exposing Plaintiff to toxic materials.

126.    Defendant made false and/or reckless statements about the Coal Ash Pond, including denying that the toxic materials were leaching onto Plaintiff's property and into Plaintiff's well water with the specific intent to induce Plaintiff to refrain from taking action requiring Defendant to remediate the problem.

127.    Defendant knew its construction of Lake Juliette disrupted the pH balance in the environment, intentionally and willingly exposing Plaintiff to toxic materials.

128.    Defendant's fraudulent and malicious behavior towards Plaintiff constitutes a pattern of bad faith conduct wherein to make money and avoid lawsuits, Defendant deliberately conceals the known hazard its operation presents to residents in the surrounding area, such as unmitigated pollution of Plaintiff's property and well water.

129.    The actions and inactions of Defendant demonstrates willful misconduct, failure to warn, collusion, fraudulent concealment, malice, fraud, fraudulent inducement, wantonness, oppression, or that entire want of care that would raise the presumption of a conscious

indifference to consequences, for which Plaintiff seeks punitive damages pursuant to O.C.G.A. § 51-12-5.1.

130.    The actions and inactions of Defendant demonstrates a specific intent to cause the intended harm authorizing punitive damages in excess of $250,000 pursuant to O.C.G.A. § 51-12-5.1.

**WHEREFORE**, Plaintiff prays for the following relief against Georgia Power:

a.    General and special damages for current and ongoing personal injuries and property damages;

b.    Punitive damages in excess of $250,000;

c.    Trial by jury with respect to all issues triable to a jury;

d.    All costs and attorney's fees associated with the prosecution of this action;

e.    Interest on the judgment at the maximum rate allowed by law; and

f.    Such other and further relief as the Court deems just and proper.


Respectfully submitted, this __8th__ day of October 2021.

**STACEY EVANS LAW**                      **ADAMS LAW FIRM**

**/s/ Stacey Godfrey Evans**              **/s/ Brian P. Adams**
Stacey Godfrey Evans                      Brian P. Adams
Georgia Bar No. 298555                    Georgia Bar No. 142474
Tiffany N. Watkins                        Mary Beth Hand
Georgia Bar No. 228805                    Georgia Bar No. 322836
John Amble Johnson
Georgia Bar No. 229112
                                          598 D.T. Walton Sr. Way
                                          Macon, GA 31201
4200 Northside Parkway, NW                Telephone: 478-238-0231
Bldg One; Suite 200                       Facsimile: 478-216-9188
Atlanta, Georgia 30327                    brian@brianadamslaw.com
Telephone: 770-779-9602                   mbhand@brianadamslaw.com
Facsimile:  404-393-2828
sevans@staceyevanslaw.com

- 19 -

twatkins@staceyevanslaw.com
ajohnson@staceyevanslaw.com


**CONLEY GRIGGS PARTIN LLP**

**/s/ Cale H. Conley**
Cale H. Conley
Georgia Bar No. 181080
James T. Cox
Georgia Bar No. 296191

4200 Northside Parkway, N.W.
Building One, Suite 300
Atlanta, Georgia 30327-3007
Phone: 404-467-1155
Fax: 404-467-1166
cale@conleygriggs.com
james@conleygriggs.com

*Counsel for Plaintiff*